c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| WILEY EZELL, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 3:17-CV-00796 |
| VERSUS | JUDGE JAMES |
| MEDTRONIC PLC, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are a Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss") (Doc. 10), filed by Defendant Medtronic plc ("Medtronic plc"), and a Motion for Leave to File Amended and Supplemental Petition ("Motion for Leave to Amend") (Doc. 12), filed by pro se Plaintiffs Wiley Ezell and Sherri Ezell ("Plaintiffs"). Plaintiffs oppose Medtronic plc's Motion to Dismiss. (Docs. 16, 20). Medtronic plc opposes Plaintiffs' Motion for Leave to Amend. (Doc. 21).

Plaintiffs' Motion for Leave to Amend should be granted under Fed. R. Civ. P. 15(a)(1)(B). Medtronic plc's Motion to Dismiss (Doc. 10) should be granted in part for lack of personal jurisdiction over Medtronic plc, and denied in part because Plaintiffs have shown a prima facie case of personal jurisdiction as to Medtronic Vascular Galway.

## I.    Background

On February 9, 2017, Plaintiffs filed an action against Medtronic plc in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana.  (Doc. 1-1).

Plaintiffs name as Defendants Medtronic, PLC, and XYZ Insurance Company. (Doc. 1-1). Plaintiffs allege Medtronic plc is an international company, which sells its products all over the world, including Ouachita Parish, Louisiana.[1] (Doc. 1-1).

Wiley Ezell ("Ezell") alleges he was admitted as a patient to Glenwood Regional Medical Center, West Monroe, Louisiana, for a "left main to ramus percutaneous coronary intervention with drug-eluting Medtronic stent." (Doc. 1-1). Plaintiffs allege Ezell was re-admitted on February 11, 2016, at which time it was discovered that the 2015 "Medtronic stent" had fractured, resulting in failure of the device. (Doc. 1-1).

Plaintiffs allege Medtronic plc is liable for failure to inform consumers of the dangers associated with their stents, for production and sale of faulty medical products, and for failure to identify design flaws and issue timely recall. (Doc. 1-1). Plaintiffs further allege that due to Medtronic plc's negligence, Ezell had an emergent cardiac episode necessitating replacement of a "Medtronic stent." (Doc. 1-1). Plaintiffs seek monetary damages, legal interest, and all costs. (Doc. 1-1).

---

[1] Medtronic plc is the result of Medtronic, Inc.'s January 26, 2015 acquisition of Covidien plc, a public limited company organized under the laws of Ireland. Medtronic, Inc., a Minnesota corporation, and Covidien were combined under and became subsidiaries of Medtronic plc. Medtronic plc functions in four operating segments that primarily manufacture and sell device-based medical therapies – Cardiac and Vasular Group, Minimally Invasive Therapies Group, Restorative Therapies Group, and Diabetes Group. See http://phx.corporate-ir.net/phoenix.zhtml?c=76126&p=irol-SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdlPTExMDEyOTY3JkRTVE9MCZTRVE9MCZTUURFU0M9U0VDVDElPTl9FTlRJRUkkUmc3Vic2lkPTU3#s20C6C5EB56BAFC06C95DCD2272595997.

Medtronic plc removed based upon diversity jurisdiction.[2] (Doc. 1). Medtronic plc alleges Plaintiffs' Complaint is a product liability action stemming from the alleged use of a Medtronic Resolute Integrity drug-eluting stent. (Doc. 1). Medtronic plc is the parent company of Medtronic Vascular Galway (Unlimited Company) ("Medtronic Vascular Galway") – the manufacturer of the drug-eluting stent Ezell received. (Doc. 10-1).

Medtronic plc now seeks dismissal based on Fed. R. Civ. Proc. 12(b)(2) for lack of personal jurisdiction. (Doc. 10). Medtronic plc argues it does not have sufficient minimum contacts with the State of Louisiana for this Court to exercise personal jurisdiction over Medtronic. (Doc. 10). In support, Medtronic plc submitted the declaration of Anne Ziebell, Medtronic, Inc.'s Senior Legal Program Manager, Corporate & Securities. (Doc. 10-2).

Plaintiffs responded seeking leave to file a First Amending and Supplemental Petition for Damages under Fed. R. Civ. P. 15. (Doc. 12). Plaintiffs also filed an opposition to Medtronic plc's Motion to Dismiss, with supporting exhibits. (Docs. 16, 20).

---

[2] Medtronic plc alleges Plaintiffs attempted service through the Louisiana Secretary of State on February 22, 2017. (Doc. 1). Medtronic plc received a copy of the Plaintiffs' Complaint and Citation from the Secretary of State on March 7, 2017, at Minneapolis, Minnesota. (Doc. 1). Medtronic plc responded to the Secretary of State that attempted service was not effective. (Doc. 1-3). Medtronic plc provided the address to Medtronic plc's headquarters in Dublin, Ireland for proper service on Medtronic plc. (Doc. 1-3). The Secretary of State sent a copy of Plaintiffs' Complaint to Medtronic plc's headquarters in Ireland on March 23, 2017. (Doc. 1-4). Medtronic plc asserts the suit was timely removed within thirty (30) days after receipt of Ezell's medical bills on May 22, 2017, said bills being "other paper[s]" in which Medtronic plc first ascertained the case was removable. (Doc. 1). Medtronic plc is a publicly held corporation, incorporated under the laws of Ireland, with its principal place of business in Minnesota. (Doc. 1). Medtronic plc is a citizen of Ireland and Minnesota. (Doc. 1). Plaintiffs are citizens of Louisiana. (Doc. 1).

## II.    Law and Analysis

### A.    Plaintiffs should be allowed to amend their complaint under Rule 15(a)(1)(B).

Plaintiffs seek to amend their Original Complaint following the filing of Medtronic plc's Motion to Dismiss. (Doc. 12). In its Motion to Dismiss (Doc. 10), Medtronic plc argues that if Plaintiffs' allegations are true, Ezell obtained a drug-eluting stent manufactured by Medtronic Vascular Galway, its subsidiary. (Doc. 10).

In response, Plaintiffs seek to re-urge their Original Complaint against Medtronic plc, and amend and supplement to add Medtronic Vascular Galway as a defendant. (Doc. 12-1). Plaintiffs allege Medtronic Vascular Galway – the manufacturer of the stent at issue – has sufficient minimum contacts with the State of Louisiana to justify jurisdiction. (Doc. 12-1). Plaintiffs allege Medtronic Vascular Galway is also liable to Plaintiffs for failure to adequately inform consumers of the dangers associated with their stents; production and sale of faulty medical products; and failure to identify design flaws and issue timely recall. (Doc. 12).

Medtronic plc opposes the amendment as futile because the Court does not have personal jurisdiction over Medtronic plc. (Doc. 21). Medtronic plc argues that after providing Plaintiffs with the correct manufacturer, "as expected," Plaintiffs soon thereafter filed a Motion for Leave to Amend (Docs. 10, 19, 21). However, Medtronic plc expected Medtronic Vascular Galway to be substituted as the proper defendant. (Doc. 19). Medtronic plc takes issue with the fact that the pro se Plaintiffs add Medtronic Vascular Galway as a party, but maintain allegations against Medtronic plc. (Doc. 19). Medtronic plc argues, in essence, that since the amendment kept them

as a Defendant, but did not assert any additional jurisdictional facts as to Medtronic plc, the Court should grant its Rule 12(b)(2) Motion to Dismiss and also deny Plaintiffs' leave to amend.  (Doc. 19).  Medtronic plc does not dispute that Medtronic Vascular Galway – the correct manufacturer it provided for the stent at issue – is properly named in the Plaintiffs' First Supplemental and Amending Complaint. (Docs. 10, 19, 21).

Leave to amend generally should be granted absent some justification for refusal such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Jacobsen v. Osborne, 133 F.3d 315, 318 (5th Cir. 1998).  A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." Rio Grande Royalty Co. v. Energy Transfer Partners, LP, 620 F.3d 465, 468 (5th Cir. 2010).

Determining when justice requires permission to amend rests within the discretion of the trial court.  Bisby v. Garza, 2008 WL 465320, at *1 (S.D. Tex. 2008) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); Nilsen v. City of Moss Point, Miss., 621 F.2d 117, 122 (5th Cir. 1980)).  However, joinder of additional defendants in an action requires permission from the court, and the defendants must be involved in the same transaction or occurrence, with common questions of law or fact, as the originally named defendants. Fed. R. Civ. P. Rule 20.

In exercising its discretion in considering a motion to amend a complaint, the district court may consider, among other factors, undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment.  Bisby, 2008 WL 465320, at *1 (citing Daves v. Payless Cashways, Inc., 661 F.2d 1022, 1024 (5th Cir. 1981)).

Here, Plaintiffs seek to timely amend their pleading within 21 days after service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs can amend – without the court's leave or the opposing party's consent – within the earlier of 21 days after the defendant's answer or a Rule 12(b)(2) motion is served.  See Fed. R. Civ. P. 15(a)(1)(B).  Rule 15(a) also provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  Medtronic plc filed their Rule 12(b)(2) Motion to Dismiss on July 12, 2017. (Doc. 10).  Plaintiffs timely filed their Motion to Amend on July 26, 2017 under Fed. R. Civ. P. 15(a)(1)(B).  (Doc. 12).

Further, when an amended complaint relates back, the party avoids the preclusive effect of a statute-of-limitations defense that would otherwise bar the parties or claims added in the amended complaint.  See Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 541 (2010).  For relation back to be proper, the plaintiff must (1) amend its pleading to bring in the proper party; (2) satisfy the "same conduct, transaction, or occurrence" requirement under Fed. R. Civ. P. 15(c)(1)(B); and (3) satisfy certain notice requirements for the party being added.  See Fed. R. Civ. P. 15(c)(1)(C); see also Sanders-Burns v. City of Plano, 594 F.3d 366, 372-73 (5th Cir. 2010).  The notice requirements are satisfied if, within the 90 days permitted under

6

Fed. R. Civ. P. 4(m) for service of the summons and complaint, the party brought in by amendment: (1) received enough notice of the suit that it would not be prejudiced in defending on the merits; and (2) knew or should have known that the suit would have been brought against it but for a mistake in identifying the proper party. <u>Id.</u>; <u>see also Krupski</u>, 560 U.S. at 547-48.

In this case, Plaintiffs' proposed amendment adds the correct manufacturer of the stent that Plaintiffs allege caused injury. (Doc. 12). The proper party, Medtronic Vascular Galway, was identified and provided by Medtronic plc, with the anticipation that Plaintiffs would amend their Complaint. (Doc. 10, 19, 21). There is no evidence of undue delay or dilatory motive, nor would Plaintiffs' amendment pose undue prejudice to Medtronic plc. <u>Bisby</u>, 2008 WL 465320, at *1 (citing <u>Daves</u>, 661 F.2d at 1024). Plaintiffs' amended complaint relates back to their Original Complaint. The fact that pro se Plaintiffs add Medtronic Vascular Galway, rather than substituting them for Medtronic plc, is not grounds for denial of leave to amend. Plaintiffs' motion for leave to amend should be granted. <u>See</u> Fed. R. Civ. P. 15(a)(1)(B); <u>Foman</u>, 371 U.S. at 182.

**B.** <u>**Medtronic plc's Rule 12(b)(2) Motion to Dismiss should be granted in part and denied in part.**</u>

Medtronic plc contends that it has insufficient contacts with the State of Louisiana to support the exercise of jurisdiction by this Court. (Docs. 10, 19, 21). Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the Court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where, as in this case, a nonresident defendant challenges personal jurisdiction, the

party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citing Wyatt v. Kaplan, 686 F.2d 276, 280 (5th Cir. 1982)).

The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. Id. "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[ ] for purposes of determining whether a prima facie case for personal jurisdiction has been established." Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985) (citing DeMelo v. Toche Marine, Inc., 711 F.2d 1260, 1270 (5th Cir. 1983)). The court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. Jobe v. ATR Mktg., Inc., 87 F.3d 751, 753 (5th Cir. 1996) (citing Colwell Realty Investments v. Triple T. Inns of Arizona, 785 F.2d 1330 (5th Cir. 1986)). However, the court is not required to credit conclusory allegations, even if uncontroverted. See Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001) (citing Felch v. Transportes Lar-Mex, 92 F.3d 320, 326, n.16 (5th Cir. 1996)).

A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable law. See Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997). To exercise personal jurisdiction over a nonresident defendant, two requirements must be met. Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 336 (5th Cir. 1999). First, the nonresident defendant

8

must be amenable to service of process under the forum State's jurisdictional long-arm statute.  Id.  Second, the assertion of *in personam* jurisdiction must be consistent with the Fourteenth Amendment's Due Process Clause.  Id.  Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution.  See La. Rev. Stat. Ann. § 13:3201(B).  Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the nonresident defendant comports with federal due process.

The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when:  (1) that defendant has established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice."  Moncrief Oil Int'l v. OAO Gasprom, 481 F.3d. 309, 311 (5th Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 418 (5th Cir.1993) (citing Int'l Shoe Co., 326 U.S. at 316).  The "minimum contacts" prong of the inquiry may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Gundle Lining Construction Corporation v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996).  "Minimum contacts" can be established through specific jurisdiction or general jurisdiction.  Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000).

1.   <u>**Minimum contacts**</u>

a.   <u>**General Jurisdiction**</u>

A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (quoting <u>Int'l Shoe</u>, 326 U.S at 317).  A corporation is generally only "at home" in the state of its incorporation or its principal place of business.  <u>See</u> <u>BNSF Ry. Co. v. Tyrrell</u>, 137 S.Ct. 1549, 1558 (2017) (internal citations omitted).  "In an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" <u>Id.</u> (quoting <u>Daimler AG v. Bauman</u>, 134 S.Ct. at 760-61 & n. 19 (2014)).  "Injecting a product, even in substantial volume, into a forum's 'stream of commerce,' without more, does not support general jurisdiction." <u>Jackson v. Tanfoglio Giuseppe, S.R.L.</u>, 615 F.3d 579, 584 (5th Cir. 2010) (citing <u>Bearry v. Beech Aircraft Corp.</u>, 818 F.2d 370, 375 (5th Cir. 1987)).

In <u>Daimler</u>, the Court expressly rejected the argument that a corporate defendant is subject to general jurisdiction in every state where it engages in a substantial, continuous, and systematic course of business.  <u>Daimler</u>, 134 S.Ct. at 760-761.  Instead, the Court explained that the "continuous and systematic" test remains relevant only for the purpose of establishing *specific* jurisdiction over a corporate defendant that is neither incorporated nor has its principal place or business in the forum state – that is, personal jurisdiction based on the events or

transactions giving rise to the litigation that occurred in that particular state. Id. (emphasis added).

As such, to establish general jurisdiction over Medtronic plc, the Plaintiffs must establish the "exceptional case" that Medtronic plc's operations are so substantial as to render Medtronic plc "at home" in Louisiana. See BNSF Ry. Co., 137 S.Ct. at 1558 (quoting Daimler AG v. Bauman, 134 S.Ct. at 760-61 & n. 19 (2014)). The Fifth Circuit has observed that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." Firefighters' Ret. Sys. V. Citco Grp. Ltd., 2016 WL 3460396, at *2 (M.D. La. 2016) (citing Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)).

Here, Medtronic plc is headquartered in Dublin, Ireland, is incorporated under the laws of Ireland, and has its principal place of business in Minneapolis, Minnesota. (Docs. 1, 10-2, 19). Medtronic plc has established that it: (1) has never been licensed to do business in Louisiana; (2) has no registered agent for the service of process in Louisiana; (3) has never filed suit in a Louisiana court; (4) does not own any real or personal property in Louisiana; (5) does not have any employees in the State of Louisiana; (6) has never had a mailing address in Louisiana; (7) has no offices, warehouses, plants, or assets in Louisiana; (8) pays no taxes in or to the State of Louisiana; (9) has no local listings in telephone or business directories in Louisiana; (10) maintains no accounts at either savings and loan associations or banks in Louisana; and (11) has never marketed or advertised its services to any residents of

Louisiana.  (Doc. 10-2).

Plaintiffs have not shown any evidence of "continuous and systematic" contacts such that Medtronic plc is "at home" in Louisiana.  Plaintiffs have only shown that Medtronic plc is the parent company of Medtronic Vascular Galway – the manufacturer of the stent received by Ezell in West Monroe, Louisiana.  (Docs. 16, 20).  Accordingly, the Court finds that there is no general jurisdiction over Medtronic plc.

### b.    Specific Jurisdiction

Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum.  Luv N' Care v. Insta-Mix, 438 F.3d at 469.  Specific jurisdiction over a nonresident corporation is appropriate when:  (1) that corporation purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants [sic] contacts with the forum state. Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 343, 345 (5th Cir. 2004); see also Alpine View, 205 F.3d at 215 (citing Burger King Corporation v. Rudzewicz, 471 U.S. 462, 474 (1985)).

### i.    Medtronic Vascular Galway is not the agent or alter ego of Medtronic plc

Personal jurisdiction over a nonresident corporation may not be based upon the contacts with the forum state by another corporate entity with which the nonresident corporation may be affiliated.  Freudensprung, 379 F.3d at 343, 345 (citations omitted).  A subsidiary's contacts may be attributed or imputed to the

parent for personal jurisdiction purposes where the subsidiary is the parent's alter ego or general agent.  See In re Chinese-Manufactured Drywall Products Liability Litigation, 753 F.3d 521, 546 (5th Cir. 2014); see also Jackson, 615 F.3d at 586.  The general presumption of corporate separateness may be overcome with clear evidence beyond the mere existence of a corporate relationship between a resident and nonresident to warrant jurisdiction over the nonresident.  Freudensprung, 379 F.3d at 346 (citations omitted).  "The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction."  Hargrave, 710 F.2d at 1159.

In determining whether Plaintiffs have overcome the presumption of corporate separateness, this Court considers the Hargrave factors set forth by the Fifth Circuit: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether they share officers and directors; (4) whether they observe corporate formalities; (5) whether they maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over its daily operations.  Freudensprung, 379 F.3d at 346 (citing Hargrave, 710 F.2d at 1160); see also Dickson Marine Inc., 179 F.3d at 339 (citing Hargrave, 710 F.2d at 1160).

Here, Medtronic plc is the parent company of its subsidiary, Medtronic Vascular Galway.  (Docs. 10, 10-2).  Medtronic plc does not manufacture, sell, or

distribute drug-eluting stents. (Doc. 10-2). Assuming Plaintiffs' allegations are true, Medtronic Vascular Galway manufactured the drug-eluting stent Ezell received, not Medtronic plc. (Doc. 10-2).

Medtronic plc and Medtronic Vascular Galway are not located in the same office. (Doc. 10-2). Medtronic plc does not maintain control over its subsidiaries at the operations level. (Doc. 10-2). Medtronic plc's finances and its subsidiaries' finances are formally entered in separate ledgers. (Doc. 10-2). Medtronic plc and Medtronic Vascular Galway maintain separate financial statements. (Doc. 10-2). Medtronic plc's profits and losses belong to Medtronic plc, and Medtronic Vascular Galway's profits and losses belong to Medtronic Vascular Galway. (Doc. 10-2). Medtronic plc and Medtronic Vascular Galway have their own board of directors and officers. (Doc. 10-2). However, some of the officers of Medtronic plc also serve as officers or directors of Medtronic Vascular Galway. (Doc. 10-2). Medtronic plc does not pay the salaries, expenses, or losses of Medtronic Vascular Galway. (Doc. 10-2). There are no undocumented transfers of funds between Medtronic plc and Medtronic Vascular Galway. (Doc. 10-2).

Medtronic plc indirectly owns 10% of the stock of Medtronic Vascular Galway. (Doc. 10-2). The performance and major business plans of Medtronic Vascular Galway may be subject to review by Medtronic plc. (Doc. 10-2). Important actions taken by management of Medtronic Vascular Galway are reported to Medtronic plc. (Doc. 10-2). Medtronic Vascular Galway has independent responsibilities for the management of its business, including control over its day-to-day operations and

14

employees.  (Doc. 10-2).  Medtronic plc's board meetings, shareholder meetings, corporate minutes, records, and accounts are entirely separate from those of Medtronic Vascular Galway.  (Doc. 10-2).  Medtronic Vascular Galway separately observes all corporate formalities in its operations.  (Doc. 10-2).

Plaintiffs argue that Medtronic entities, Medtronic Inc. and Medtronic USA, Inc., are registered with the Secretary of State of Louisiana; thus, Medtronic plc is doing business in the State of Louisiana.  (Doc. 20).  Plaintiffs argue that neither Medtronic plc nor Medtronic Vascular Galway are registered with the Secretary of State of Louisiana, and that Medtronic Vascular, Inc. is no longer active.  (Doc. 20). Plaintiffs argue, despite this fact, the manufacturer's stent ended up in Ezell's heart. (Doc. 20).  Plaintiffs argue that Medtronic plc subsidiaries are doing business in the State of Louisiana.  (Doc. 20).  Plaintiffs argue the manufacturer (Medtronic Vascular Galway) is in Ireland, and is not registered in Louisiana.   (Doc. 20).  Plaintiffs assert that in trying to "look for Medtronic (stents) the company listed and shown is "PLC from Minneapolis, MN."  (Doc. 20).  Further, Plaintiffs argue the vascular subsidiary is inactive in Louisiana.  (Doc. 20).

Considering the Hargrave factors, Plaintiffs have not shown that Medtronic Vascular Galway is the alter ego or general agent of Medtronic plc.  There is simply no clear evidence from Plaintiffs to overcome the presumption of corporate separateness of Medtronic plc and Medtronic Vascular Galway to warrant jurisdiction over Medtronic plc.  See Freudensprung, 379 F.3d at 346.

ii.    **Medtronic Vascular Galway's contacts with Louisiana cannot be imputed to Medtronic plc to ascertain specific jurisdiction over Medtronic plc.**

In cases involving products sold or manufactured by foreign defendants, the Fifth Circuit applies the "stream-of-commerce" approach to personal jurisdiction. Ainsworth v. Moffett Engineering, Ltd., 716 F.3d 174, 177 (5th Cir. 2013). The stream-of-commerce principle refers to "the regular and anticipated flow of products from manufacturer to distribution to retail sale." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 117 (1987).

In Ainsworth, the Fifth Circuit explained that, under the "stream-of-commerce" approach to personal jurisdiction, the minimum contacts requirement is met so long as the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." Id. at 177. Under that test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.' " Id.

"Flow of a manufacturer's products into the forum…may bolster an affiliation germane to *specific* jurisdiction." Goodyear, 564 U.S. at 926 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (emphasis in original) (Where "the sale of a product … is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve … the market for its product in

[several] States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise *has there been the source of injury to its owner or to others*" (emphasis added)).    A "single act, by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." <u>Ruston Gas Turbines, Inc.</u>, 9 F.3d at 417.

Plaintiffs have alleged that Ezell received a Medtronic stent in West Monroe, Louisiana.  (Doc. 1).  Assuming those allegations are true, the record establishes Medtronic Vascular Galway is the manufacturer of the stent.  (Docs. 10, 10-2).  Ezell received a Medtronic Vascular Galway stent in West Monroe, Louisiana, that allegedly caused injury.  (Docs. 10, 20).  The Court finds this is a sufficiently related contact to confer specific jurisdiction over Medtronic Vascular Galway.  Assuming Plaintiffs allegations are true, Plaintiffs' cause of action "arises out of" Medtronic Vascular Galway's contact with the state.  <u>See</u> <u>Goodyear</u>, 564 U.S. at 2855 (citing <u>World-Wide Volkswagen</u>, 444 U.S. at 297).    According to the Supreme Court, "although physical presence in the forum is not a prerequisite to jurisdiction, … physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact." <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1122 (2014).  Therefore, the Court finds Plaintiffs have set forth a prima facie case of personal jurisdiction over Medtronic Vascular Galway.

However, Medtronic plc did not manufacture, distribute, or sell that device. (Doc. 10-2).  "Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the

17

subsidiary's contacts to the parent." <u>Adm'rs. of Tulane Educ. Fund v. Ipsen, S.A.</u>, 450 F.App'x 326, 331 (5th Cir. 2011) (citations omitted).  As discussed above, Plaintiffs have not overcome the presumption of corporate separateness of Medtronic plc and Medtronic Vascular Galway.  Therefore, Plaintiffs have not shown a prima facie case of personal jurisdictional over Medtronic plc.

### 2.    <u>Fair Play and Substantial Justice</u>

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." <u>Wilson v. Belin</u>, 20 F.3d 644,647 (5th Cir. 1994) (citing <u>Asahi</u>, 480 U.S. at 105).  The fairness inquiry is determined by analyzing several factors. <u>Asahi</u>, 480 U.S. at 113. These factors are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.  <u>See</u> <u>Gundle Lining Const. Corp.</u>, 85 F.3d at 207; <u>Bullion v. Gillespie</u>, 895 F.2d 213, 216 n. 5 (5th Cir.1990) (internal citations omitted). However, having found no sufficiently related or unrelated minimum contacts with the forum, the Court finds it unnecessary to consider the "fairness" prong for the exercise of personal jurisdiction.

### 3.    <u>To the extent Plaintiffs' response seeks jurisdictional discovery, Plaintiffs' request is denied.</u>

In response to Medtronic plc's Motion to Dismiss, Plaintiffs also ask for the number of the stent, where it was made, and were there any more of that number

that fractured.  (Doc. 20).  Additionally, it appears that Plaintiffs argue that it is premature to dismiss Medtronic plc from this suit.  (Doc. 20).  Plaintiffs argue that requiring Plaintiffs to take their claim to court in Ireland over a stent received in Louisiana, offends notions of fair play and substantial justice.  (Doc. 20).  Based on Plaintiffs' inquiries, it appears Plaintiffs indirectly ask, albeit without reference, for jurisdictional discovery.  However, it appears that Plaintiffs inquiries are more appropriately directed at the manufacturer, rather than the parent company – Medtronic plc.

"Discovery on matters of personal jurisdiction…need not be permitted unless the motion to dismiss raises issues of fact."  Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d. 841, 855 (5th Cir. 2000).  A district court has "broad discretion in all discovery matters," and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."  Wyatt, 686 F.2d at 283.  But "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted."  Id.  Plaintiffs do not address whether the information they seek supports specific jurisdiction as to Medtronic plc.  (Doc. 20).  Thus, to the extent Plaintiffs are requesting jurisdictional discovery as to Medtronic plc to advance any "stream of commerce" theory against them, this Court recommends that request be denied.  See Alpine View, 205 F.3d at 221.[3]

---

[3] The Court notes that Plaintiffs may still direct discovery to Medtronic Vascular Galway regarding the requested information.  Leave of court is not required.

III.    <u>Conclusion</u>

**IT IS RECOMMENDED** that Plaintiffs' Motion for Leave to File Amended and Supplemental Petition (Doc. 12) be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that Medtronic plc's Motion to Dismiss for Lack of Jurisdiction (Doc. 10) be **GRANTED in part,** dismissing with prejudice Plaintiffs' claims against Medtronic plc for lack of personal jurisdiction**,** and **DENIED in part,** as Plaintiffs have established a *prima facie* case of personal jurisdiction over Medtronic Vascular Galway**.**

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this

__6th__ day of February, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge