c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| WILEY EZELL, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 3:17-CV-00796 |
| VERSUS | JUDGE DOUGHTY |
| MEDTRONIC PLC, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ("Motion to Dismiss") (Doc. 36) filed by Defendant Medtronic Vascular Galway Unlimited Company ("Medtronic Vascular"). Plaintiffs Wiley Ezell and Sherri Ezell ("Plaintiffs") oppose Medtronic Vascular's Motion to Dismiss. (Docs. 38, 44).

The Motion to Dismiss (Doc. 36) should be granted because Plaintiffs claims are expressly preempted by the Medical Device Amendments ("MDAs"), 21 U.S.C. § 360k(a), to the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 301, *et seq.*, and because Plaintiffs fail to allege a claim for relief sufficient to survive express preemption.

I. Background

On February 9, 2017, Plaintiffs filed an action in the Fourth Judicial District Court, Ouachita Parish, State of Louisiana. (Doc. 1-1). Plaintiffs originally named as Defendants Medtronic, PLC, and XYZ Insurance Company. (Doc. 1-1).

Wiley Ezell ("Ezell") alleges he was admitted as a patient to Glenwood Regional Medical Center, West Monroe, Louisiana, for a "left main to ramus percutaneous coronary intervention with drug-eluting Medtronic stent." (Doc. 1-1). Plaintiffs allege Ezell was re-admitted on February 11, 2016, at which time it was discovered that the 2015 "Medtronic stent" had fractured, resulting in failure of the device. (Doc. 1-1).

Plaintiffs allege Medtronic plc is liable for failure to inform consumers of the dangers associated with their stents, for production and sale of faulty medical products, and for failure to identify design flaws and issue timely recall. (Doc. 1-1). Plaintiffs further allege that due to Medtronic plc's negligence, Ezell had an emergent cardiac episode necessitating replacement of a "Medtronic stent." (Doc. 1-1). Plaintiffs seek monetary damages, legal interest, and all costs. (Doc. 1-1).

Medtronic plc removed based upon diversity jurisdiction. (Doc. 1). Medtronic plc alleged Plaintiffs' Complaint is a product liability action stemming from the alleged use of a Medtronic Resolute Integrity drug-eluting stent. (Doc. 1). Medtronic plc is the parent company of Medtronic Vascular – the manufacturer of the drug-eluting stent Ezell received. (Doc. 10-1). Upon the undersigned's Report and Recommendation (Doc. 27), the Court dismissed Medtronic plc for lack of personal jurisdiction. (Doc. 27). The Court also granted Plaintiffs leave to file a First Amending and Supplemental Petition for Damages under Fed. R. Civ. P. 15. (Doc. 27). Plaintiffs amended, asserting their original Complaint in its entirety, and adding defendant Medtronic Vascular, as the manufacturer of "a drug-eluting stent

surgically implanted into" Ezell. (Doc. 28). Plaintiffs allege Medtronic Vascular is liable for:

> A. Failure to adequately inform consumers of the dangers associated with their stents;
> B. Production and sale of faulty medical products;
> C. Failure to identify design flaws and issue timely recall; and
> D. Other issues to be explored and discovered through litigation.

(Doc. 28).

In response, Medtronic Vascular filed this Motion to Dismiss, asserting that Plaintiffs' state law claims are preempted under the Medical Device Amendments, 21 U.S.C. § 360k(a), to the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 301, *et seq.* Medtronic Vascular also asserts Plaintiffs' state law claims fail to state a claim for relief under Louisiana law. (Doc. 36). Plaintiffs respond in opposition that Ezell is a claimant under 21 U.S.C. § 1602(2) and § 1602(4), who received an implant in his chest and suffers daily. (Doc. 38). Plaintiffs allege the stent is fractured and his records show it still causes "pain, suffering, injury, and harm." (Doc. 38). Plaintiffs allege "they have no problem with the Federal law taking authority over state law in this matter." (Doc. 38).

Medtronic Vascular replies that Plaintiffs fail to allege a claim that both the Louisiana Products Liability Act ("LPLA") recognizes and federal law does not preempt. (Doc. 39). Medtronic Vascular asserts 21 U.S.C. § 1602 does not create a right of action, and 21 U.S.C. § 1603(2) makes that clear. (Doc. 39). Plaintiffs respond attaching procedure notes showing the stent was fractured, asserting there are plenty of facts that state a claim. (Doc. 44).

II.    <u>Law and Analysis</u>

    A.    <u>Standards governing the 12(b)(6) Motion to Dismiss</u>

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Plausibility does not equate to possibility or probability; it lies somewhere in between. <u>Id.</u> Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See <u>Twombly</u>, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. <u>Yumilicious Francise, L.L.C. v. Barrie</u>, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. <u>Iqbal</u>, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual

4

enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). However, that general rule does not apply if an amendment would be futile. Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and

citations omitted); accord Fenghui Fan v. Brewer, 377 Fed.App'x. 366, 367 (5th Cir. 2010).

    B.    <u>Plaintiffs' claims are preempted by federal law.</u>

The Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended, 21 U.S.C. § 301 *et seq.,* has long required Food and Drug Administration ("FDA") approval for the introduction of new drugs into the market. Riegel v. Medtronic, Inc., 552 U.S. 312, 315 (2008). The Medical Device Amendments of 1976 ("MDAs") created a scheme of federal safety oversight for medical devices while sweeping back state oversight schemes. Id. at 316.

The MDAs established various levels of oversight for medical devices, depending on the risks they present. Id. at 317; see 21 U.S.C. § 360c(a)(1). Class III devices receive the most federal oversight, such as "replacement heart valves, implanted cerebella stimulators, and pacemaker pulse generators." Id. at 317 (citation omitted). Class III is reserved for devices that either "presen[t] a potential unreasonable risk of illness or injury, or which are purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." Medtronic, Inc. v. Lohr, 518 U.S. 470, 477 (1996) (citing 21 U.S.C. § 360c(a)(1)(C)) (internal marks omitted). The manufacturer of a new Class III device must provide the FDA with a "reasonable assurance" that the device is both safe and effective through the rigorous premarket approval ("PMA") process before the device may be introduced to the market. Id.; see 21 U.S.C. § 360c(a)(1)(C)(ii)(II).

6

The PMA process requires a manufacturer to submit detailed information regarding the safety and efficacy of the device, including "full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a 'full statement' of the devices 'components, ingredients, and properties and of the principle or principles of operation'; 'a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device'; samples or device components required by the FDA; and a specimen of the proposed labeling." Riegel, 552 U.S. at 318 (citing 21 U.S.C. § 360e(c)(1)). The FDA crafts each PMA process specifically for the individual medical device and conditions the sale and use of the device on the manufacturer's compliance with enumerated safety requirements. Id. at 322–23. Where, as here, the FDA has issued PMA to a Class III device, that approval requires the device to be manufactured "with almost no deviations from the specifications in its approval application . . . [to] provide[ ] a reasonable assurance of safety and effectiveness." Id. at 323.

The MDAs contain an express preemption provision that a state shall not "establish or continue in effect with respect to a device intended for human use any requirement— . . . (1) which is different from, or in addition to, any requirement applicable under [federal law] to the device, and . . . (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under" relevant federal law. Id. (citing 21 U.S.C. § 360k(a)).

7

The FDA has promulgated specific regulatory provisions interpreting § 360k which state, in pertinent part:

> State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d).

Presumably, Plaintiffs are asserting a products liability claim under the Louisiana Products Liability Act ("LPLA"). Although Plaintiffs do not specifically reference the LPLA, Plaintiffs allege the "drug-eluting Medtronic stent" was defective and resulted in injury. (Doc. 1-1). Plaintiffs allege Medtronic Vascular is liable as the manufacturer of the allegedly defective drug-eluting stent. (Docs. 1-1, 28). The LPLA provides the exclusive remedy against a manufacturer for damages caused by its products. See La. R.S. 9:2800.52. A plaintiff may not recover under any theory of liability that is not set forth in the LPLA. Id.; Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261-62 (5th Cir. 2002). "[N]egligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA." Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 261 (5th Cir. 2002).

The LPLA provides that a manufacturer "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S

8

9:2800.54(A). A product is unreasonably dangerous for the purposes of the statute "if and only if" it is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. La. R.S. 9:2800.54(B)(1–4). Thus, the LPLA limits the plaintiff to four theories of recovery: construction or composition defect, design defect, inadequate warning, and breach of express warranty. Parra v. Coloplast Corp., CV 16-14696, 2017 WL 24794, at *2 (E.D. La. Jan. 3, 2017).

In Riegel, the United States Supreme Court held that claims involving devices approved by the FDA after having been subjected to the rigorous PMA process are preempted because the PMA process imposes device-specific "requirements" on manufacturers. Riegel, 552 U.S. at 312. The United States Supreme Court set forth a two-prong analysis for determining whether a plaintiff's state law claims are preempted by the MDA. First, the court must determine whether the Federal Government has established requirements applicable to the device at issue. Id., 552 U.S. at 322. If there are federal requirements for the device, the court must then determine whether the plaintiff's state law claims are based upon a "requirement" of state law that is "different from, or in addition to" federal requirements and that "relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." Id., 552 U.S. at 323 (citing 21 U.S.C. § 360k(a)). If a state law claim is based upon a state requirement that is "different from, or in addition to" federal requirements, plaintiff's claim is preempted by the MDA. See id.

In addressing the first prong of the preemption analysis, the Riegel Court reasoned that the PMA process itself imposes "requirements" under the MDA. Id., 552 U.S. at 322–23. Devices granted PMA by the FDA are required to be made with almost no deviations from the specifications in its approval application since it is the approved form of the device that the FDA has determined "provides a reasonable assurance of safety and effectiveness." Id. Consequently, any device that has received approval from the FDA through the PMA process automatically satisfies the first prong of the preemption analysis. Riegel, 552 U.S. at 321-23.

With respect to the second prong, the Riegel Court equated state common-law duties with "requirements," noting that a tort judgment "'can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" Id., 522 U.S. at 324 (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 521 (1992)). In reaching this conclusion, the Court determined that the general common-law duties underlying negligence, strict liability, and implied-warranty claims are maintained "with respect to devices," and specifically rejected the proposition that in order to be preempted the "state requirement must apply *only* to the relevant device, or only to medical devices and not to all products and all actions in general." Id., 552 U.S. at 327–228 (emphasis in original).

Medtronic Vascular argues Plaintiffs' state law claims are preempted by the MDAs.[1] (Doc. 36-1). It is undisputed that the stent at issue is the Medtronic

---

[1] Plaintiffs do not oppose application of federal law to their claims and offer no opposition to Medtronic's preemption argument. (Doc. 38). Rather, Plaintiffs focus on the sufficiency of their pleadings to assert a claim against Medtronic Vascular. (Doc. 38). Plaintiffs state they have "no problem with the Federal law taking authority over state law in this matter." (Doc. 38).

10

Resolute Integrity Stent. (Docs. 36-1, 28). It is also undisputed Medtronic Vascular manufactures the Medtronic Resolute Integrity Stent. (Docs. 36-1, 38). In support, Medtronic attaches Ezell's medical record. (Doc. 36-2).[2] The Medtronic Resolute Integrity Stent is a Class III device under the FFDCA and is subject to the FDA's PMA process.[3] The Court may take judicial notice of matters of public record. See Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (citing Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.")).[4] The Court takes judicial notice of the FDA's website, which indicates that the Medtronic Resolute Integrity Stent underwent the FDA's PMA process under the FFDCA.[5] The PMA shows multiple supplements in which the FDA has approved design changes and process changes – including manufacturing and labeling changes.[6]

---

[2] "In deciding a Rule 12(b)(6) motion to dismiss, a court generally 'may not go outside the pleadings.' However, a court may also rely upon 'documents incorporated into the complaint by reference and matters of which a court may take judicial notice' in deciding a motion to dismiss." Caldwell Wholesale Co., L.L.C. v. R.J. Reynolds Tobacco Co., CV 17-0200, 2018 WL 2209165, at *4 (W.D. La. May 11, 2018) (internal citations omitted). Here, Plaintiffs reference the "drug-eluting Medtronic stent" in their Complaint, and specifically refer to medical treatment on February 11, 2016, at which time the fracture was discovered. (Doc. 1-1). Plaintiffs also do not oppose reference to and attachment of Ezell's February 11, 2016 medical record, showing he received a Medtronic Resolute Integrity Stent. The Court finds that the record may be considered.

[3] See FDA PMA Database, accessible at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P110013 (last updated December 3, 2018).

[4] A court may take judicial notice of the FDA's public records without transforming a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. See Sons v. Medtronic, Inc., 915 F.Supp.2d 776, 781 (W.D. La. 2013) (citing Rollins v. St. Jude Medical, 583 F.Supp.2d 790, 805 (W.D. La. 2008) (citing Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

[5] See FDA PMA Database, accessible at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P110013 (last updated December 3, 2018).

[6] See FDA PMA Database, accessible at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P110013 (last updated December 3, 2018).

Thus, under Riegel, the first prong of the preemption analysis has been met. Riegel, 552 U.S. at 321-23 (concluding that the first prong of the preemption test is automatically satisfied where a medical device has received premarket approval).

The Court must ascertain whether Plaintiffs' state law claims are based upon a "requirement" of state law that is "different from, or in addition to" federal requirements and that "relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." Riegel, 552 U.S. at 323 (citing 21 U.S.C. § 360k(a)). To the extent state law claims impose duties on Class III PMA devices that are different to or in addition to the requirements set forth by the FDA, they are necessarily preempted. Id. at 329-30. However, "parallel" state actions – state law claims that are premised on violations of FDA regulations – are permitted. Id. at 330; see also Lohr, 518 U.S. at 495.

To successfully plead a parallel claim outside the preemptive reach of the MDAs, a plaintiff's allegations that the manufacturer violated FDA regulations must meet the Twombly plausibility standard. Bass v. Stryker Corp., 669 F.3d 501, 509 (5th Cir. 2012). The complaint must contain more than conclusory and vague allegations that the manufacturer violated FDA requirements when producing the device. See Funk, 631 F.3d at 782 (complaint did not specify the manufacturing defect; nor did it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused personal injury; nor did it detail how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process). "[I]f a plaintiff pleads that a

manufacturer of a Class III medical device failed to comply with either the specific processes and procedures that were approved by the FDA or [Current Good Manufacturing Practices ("CGMPs")] themselves *and*, that this failure caused the injury, the plaintiff will have pleaded a 'parallel' claim [for purposes of the preemption analysis]." Bass, 669 F.3d at 512 (emphasis in original).

Here, Plaintiffs' Amended Complaint is insufficient to assert claims that fall within the exception to preemption under Riegel. Plaintiffs' Amended Complaint does not set forth the requirements under the Louisiana Products Liability Act ("LPLA"), nor does it allege Medtronic Vascular violated FDA regulations in the manufacturing process. See Bass v. Stryker Corp., 669 F.3d 501, 509-10 (5th Cir. 2012) (affirming the conclusion that "plead a parallel claim successfully, a plaintiff's allegations that the manufacturer violated FDA regulations must meet the Twombly plausibility standard," and applying that standard to plaintiff's claim). Plaintiffs must cite with particularity what went wrong in the manufacturing process and cite the relevant FDA manufacturing standards allegedly violated. Id. at 510.

Plaintiffs' Original Complaint is three pages. (Doc. 1-1). Plaintiffs allege Ezell was admitted on May 28, 2015 as a patient to Glenwood Regional Medical Center for a "left main to ramus percutaneous coronary intervention with drug-eluting Medtronic stent." (Doc. 1-1). Plaintiffs allege Ezell was re-admitted on February 11, 2016, for recurrent cardiac symptoms at which time it was discovered

that the 2015 "Medtronic stent" had fractured, resulting in failure of the device. (Doc. 1-1).

Plaintiffs originally allege Medtronic plc is liable for failure to inform consumers of the dangers associated with their stents, for production and sale of faulty medical products, and for failure to identify design flaws and issue timely recall. (Doc. 1-1). Plaintiffs further allege that due to Medtronic plc's negligence, Ezell had an emergent cardiac episode necessitating replacement of a "Medtronic stent." (Doc. 1-1).

Plaintiffs' First Amended Complaint re-urges the Original Complaint in its entirety and adds Medtronic Vascular as the manufacturer of the allegedly defective drug-eluting stent. (Doc. 28). Plaintiffs allege Medtronic Vascular is liable for:

   E. Failure to adequately inform consumers of the dangers associated with their stents;
   F. Production and sale of faulty medical products;
   G. Failure to identify design flaws and issue timely recall; and
   H. Other issues to be explored and discovered through litigation.

(Doc. 28). Plaintiffs do not allege any specifics regarding Medtronic Vascular's alleged negligence. (Docs. 1-1, 28). Plaintiffs in opposition assert the stent was Medtronic Vascular's product and that it fractured and failed, causing injury. (Doc. 44). Plaintiffs respond that nothing more needs to be said. (Doc. 44).

Plaintiffs' Complaint, as amended, fails to allege any violation of the federal requirements under the PMA. (Docs. 1-1, 28). Plaintiffs fails to allege, other than in conclusory fashion, that the stent was defective. (Docs. 1-1, 28). Additionally, Plaintiffs fail to properly allege an LPLA claim that would constitute a parallel

14

claim within the exception to express preemption. (Docs. 1-1, 28). Plaintiffs' Complaint, as amended, is void of any allegation as to whether their product liability claim is premised on a theory that the stent was defective as approved by the FDA, or whether the stent was defective because it deviated from what was approved by the FDA. (Docs. 1-1, 28). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Iqbal, 556 U.S. at 679. To the extent Plaintiffs seek to allege Medtronic Vascular is liable for design defect, manufacturing defect, failure to warn or inadequate warning, or sale of the stent, those claims are preempted because the FDA has already approved the stent's design, labels, and manufacturing process through the PMA process.[7] [8]

---

[7] As the Supreme Court made clear in Riegel, states are not permitted to indirectly regulate the safety and effectiveness of an FDA approved medical device through the tort system. See Riegel, 552 U.S. at 324; Lemelle v. Striker Orthopaedics, 2010 WL 996523 (W.D. La. Mar.15, 2010) (wherein the district court determined that the plaintiff's redhibition claim was preempted under the MDA); McQuiston v. Boston Scientific Corp., 2009 WL 4016120 (W.D. La. Nov.19, 2009) (wherein the district court found that the plaintiff's state law claims for design defect, inadequate testing, inadequate warnings, breach of express and implied warranties, manufacturing defect, negligence, fraud, and loss of consortium were preempted under the MDA); Rollins v. St. Judge Med., 583 F.Supp.2d 790 (W.D. La. 2008) (wherein the district court determined plaintiff's claims were preempted by the MDA "to the extent they [were] based on actions by defendant which complied with FDA-approved standards and requirements").

[8] This Court has previously stated:

> "[C]laims predicated on state law that seek only to enforce federal law are impliedly preempted. See Buckman Co. v. Plaintiff's Legal Comm., 531 U.S. 341, 344, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The federal statutory scheme imbues the FDA with the power and authority to deter fraud against the administration, and dole out punishment, when necessary. Id. at 348. The enforcement of the various provisions of the FDCA is thus entrusted to the federal government, not to private plaintiffs. See, e.g., Ramirez v. Medtronic, Inc., No. cv–13–00512–PHX–GMS, 2013 U.S. Dist. LEXIS 118822, at *18, 2013 WL 4446913 (D.Ariz. Aug. 21, 2013). This concept is clearly set forth in the statutory language of 21 U.S.C. § 337(a), which states that, "[e]xcept as provide in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United States."

See Williamston v. Medtronic, Inc., 2:13-CV-02433, 2014 WL 2042004, at *3 (W.D. La. May 15, 2014).

The United States Supreme Court has clarified in Riegel that where the state laws are parallel to the federal requirements, as in the case of a plaintiff suing for damages arising out of a medical device's failure to conform to federal requirements, those laws are not preempted. Riegel, 552 U.S. at 330. Plaintiffs' Complaint, as amended, does not specify any state law claims premised on violations of FDA regulations. Thus, to the extent Plaintiffs seek to allege a parallel LPLA claim, Plaintiffs fail to allege a claim for relief for a parallel state claim that would not be preempted.

### III. Conclusion

**IT IS RECOMMENDED** that Medtronic Vascular's Motion to Dismiss (Doc. 36) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' action be **DISMISSED WITHOUT PREJUDICE.**[9]

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No

---

[9] A court should generally allow a pro se plaintiff an opportunity to amend his complaint before dismissing it for failure to state a claim. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). However, the Court has once already granted Plaintiffs leave to amend their Complaint. (Doc. 27). Plaintiffs in opposition to the instant Motion to Dismiss do not seek leave to file a second amending Complaint. (Docs. 38, 44). The Court cannot say that an amendment to cure the referenced deficiencies would be futile. Considering Plaintiffs' pro se status, the Court finds that leave to amend would be appropriate if Plaintiffs choose to amend to allege a valid parallel claim. However, if Plaintiffs do not seek leave to amend within the fourteen (14) day period for objections, the undersigned maintains this recommendation.

other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __19th__ day of December, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge